## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

BRYANT E. TURNER                                                     PETITIONER
ADC #142992

V.                                    NO. 5:17-CV-00339-JTR

WENDY KELLEY, Director,                                          RESPONDENT
Arkansas Department of Correction

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court[1] is a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus filed by Bryant E. Turner ("Mr. Turner"), an inmate in the Arkansas Department of Correction ("ADC"). *Doc. 1.* Before addressing the merits of Mr. Turner's habeas claims, the Court will review the procedural history of his case in state court.

## I. Background

On June 20, 2013, a Faulkner County jury convicted Mr. Turner of aggravated robbery, employing a firearm as a means of committing aggravated robbery, theft of property, and employing a firearm as a means of committing theft of property.[2] *See* Docket Sheet (*Doc. 17-1 at 8-9*). As a habitual offender, Mr. Turner

---

[1] The parties have consented in writing to proceed before a United States Magistrate Judge. *Doc. 9.*

[2] These charges arose from Mr. Turner using a handgun to rob a video game store in Conway, Arkansas, on August 27, 2012. *See Turner v. State*, 2014 Ark. 415, 443 S.W.3d 535.

received a *mandatory life sentence* for aggravated robbery. *Id. at 9*. Additionally, Mr. Turner received a 15-year sentence for employing a firearm as a means of committing aggravated robbery to run *consecutive* to his life sentence; a 25-year sentence for theft of property, which ran *concurrent* to his life sentence; and a 15-year sentence for employing a firearm as a means of committing theft of property, which ran *consecutive* to his 25-year theft of property conviction. *Id.*

On direct appeal, Mr. Turner argued that none of his convictions were supported by sufficient evidence. *Turner v. State*, 2014 Ark. 415, 443 S.W.3d 535 ("*Turner I*"). On October 9, 2014, the Arkansas Supreme Court rejected those arguments and affirmed Mr. Turner's convictions. *Id.*

On December 18, 2014, Mr. Turner filed a *pro se* Rule 37 Petition (*Doc. 17-1 at 16-20*), and, on April 17, 2015, he filed an Amended Rule 37 Petition (*Id. at 31-35*). In those papers, he raised the following claims:

(1)    His trial counsel, Karen Walker-Knight ("Ms. Walker-Knight"), provided ineffective assistance of counsel by allegedly failing to (a) call an alibi witness, (b) investigate Mr. Turner's case, (c) discuss trial strategy with Mr. Turner, (d) object to false statements made by the prosecutor and trial witnesses, (e) challenge the identification of Mr. Turner as the robber, (f) move to suppress or reexamine the DNA evidence, and (g) investigate and develop mitigation testimony during the sentencing phase of his trial. *See* Rule 37 Petition and Amended Rule 37 Petition, *Doc. 17-1 at 16-20, 31-35*.

(2)    He was denied a fair and impartial trial because the "the trial judge stated on record that he was aggravated with me . . . [and] [t]here was an all white jury and the victims were white so it made racial discrimination in my trial." *See* Rule 37 Petition, *Doc. 17-1 at 19*.

2

On May 15, 2015, the trial court conducted an evidentiary hearing on those Rule 37 claims. *Id. at 69-83*. During the hearing, the court asked Mr. Turner to describe and explain his claims, which he did in considerable detail. *Id. at 76-85*.

On June 16, 2015, the court entered an order denying Mr. Turner's Rule 37 Petition. *Id. at 40-42*. On December 1, 2016, the Arkansas Supreme Court affirmed the denial of Rule 37 relief. *Turner v. State*, 2016 Ark. 423, at 2, 503 S.W.3d 79, 82 ("*Turner II*").

## II. Discussion

On December 19, 2017, Mr. Turner initiated this § 2254 habeas action, in which he asserted three vague and conclusory claims arising from his state court convictions: (1) "Ineffective Assistance of Counsel"; (2) "Positive Identification"; and (3) "Failure to Investigate for Mitigation Sentencing". *Doc. 1*.

On January 18, 2018, Mr. Turner filed an Addendum to his Petition in which he provided facts to support his claims that his trial counsel was constitutionally ineffective for failing to call an alibi witness and for failing to develop and present mitigation evidence at sentencing. *Doc. 4 at 2-4*. The Addendum also raised two new claims related to judicial misconduct by the trial judge, who: (1) allegedly was under investigation for receiving bribes; and (2) abused his power and misled Turner by stating "[Turner] didn't need to argue on [his] Rule 37 hearing an[d] that [the trial judge] would rule on all grounds [for Rule 37 relief]." *Doc. 4 at 1*.

3

On February 16, 2008, Respondent filed a Motion to Dismiss, claiming Mr. Turner's habeas papers failed to state a claim for relief and, in any case, all of his claims were time-barred. *Doc. 8*.

On July 11, 2018, the Court entered an Order holding that Mr. Turner had properly and timely pled two claims of ineffective assistance of counsel:

(1)     Ms. Walker-Knight was constitutionally ineffective because she failed to call Linda Joe Neal as an alibi witness, which deprived Mr. Turner of presenting an alibi defense that could have resulted in a not guilty verdict; and

(2)     Ms. Walker-Knight was constitutionally ineffective because she failed to call witnesses to present mitigation evidence during the sentencing phase of his trial, which could have resulted in Mr. Turner receiving less than life in prison.

*Doc. 16 at 7-8*. However, because all of Mr. Turner's other habeas claims were either untimely or factually unsupported, they were dismissed, with prejudice. *Id. at 5-8*. Thus, Respondent's Motion to Dismiss was granted, in part, and denied, in part. *Id. at 7-8*.

On August 8, 2018, Respondent filed a Response, arguing that, because Mr. Turner's two remaining ineffective assistance of counsel claims were reasonably adjudicated by the Arkansas Supreme Court, they should be denied. *Doc. 17*. On September 7, 2018, Mr. Turner filed a Reply. *Doc. 21*.

For the reasons explained below, the Court concludes that both of Mr. Turner's ineffective assistance of counsel claims are without merit and must be denied.

### A.     Summary of Controlling Law Governing Ineffective Assistance of Counsel Claims

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court articulated a two-part test for evaluating whether a criminal defendant's trial counsel was constitutionally ineffective: first, was the attorney's conduct professionally unreasonable under the circumstances; and second, did the attorney's conduct prejudice the defendant's defense. *Id*. at 688. To prove trial counsel's deficient performance, a criminal defendant must establish that his attorney's conduct fell below "an objective standard of reasonableness." *Id*. To prove prejudice, a criminal defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See also*, *Burt v. Titlow*, 134 S.Ct. 10, 17 (2013) (under *Strickland*, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," with the burden to show otherwise "rest[ing] squarely on the defendant"); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) ("*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been

different."); *Weaver v. Massachusetts*, 137 S.Ct. 1899, 1910 (2017) ("[A]s a general rule [a criminal defendant] bears the burden to meet [*Strickland*'s] two standards.").

In affirming the denial of Rule 37 relief in *Turner II*, the Arkansas Supreme Court properly analyzed Mr. Turner's ineffective assistance of counsel claims under *Strickland*'s two-part test. *Turner II*, 2016 Ark. 423, at 2, 503 S.W.3d at 82. Thus, in order for Mr. Turner to now prevail on either of his two ineffective assistance of counsel claims against Ms. Walker-Knight, he must demonstrate that the Arkansas Supreme Court's *Strickland* analysis in *Turner II* was "unreasonable," *i.e.*, its decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 101-03 (2011).

Meeting this high bar is a daunting task for a habeas petitioner because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotations and citations omitted). For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland*'s high bar [for evaluating ineffective-assistance claims] is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under

§ 2254(d) is all the more difficult." *Id*. at 105 (citations omitted). The standards created by *Strickland* and § 2254(d) "are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*.[3]

### B.    Ms. Walker-Knight's Alleged Ineffectiveness for Failing to Call an Alibi Witness

Mr. Turner asserts that, if Ms. Walker-Knight had called his great aunt,[4] Linda Joe Neal, as a witness, she would have testified that, at the time of the aggravated robbery in Conway, Arkansas, on August 27, 2012, Mr. Turner was with her in Memphis, Tennessee, "looking at videos they had rented from Blockbuster." *Doc. 4 at 3*.

During the Rule 37 hearing, Mr. Turner explained to the trial judge that, after attending a family reunion in Memphis, Tennessee, on July 4, 2012, he remained in Memphis with Ms. Neal, and he was with her at the time of the robbery in Conway:

> [W]hen I came back from Memphis and got locked up [in October 2012], I spoke with her [Ms. Neal] on the phone and she told me that she would come testify for me. And once I told my lawyer [Ms. Walker-Knight] that, she said that she investigated and talked to Ms. Neal, but there's no

---

[3]  Where a state court has previously adjudicated an ineffective assistance of counsel claim on the merits, 28 U.S.C. § 2254(d)(1) and (d)(2) provide that a federal habeas court may grant habeas relief, on such a claim, in only three limited situations: the state court adjudication (1) was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States;" (2) "involved an unreasonable application" of clearly established federal law; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

[4]  At some points in the record, Ms. Neal is referred to as Mr. Turner's "aunt." However, during the Rule 37 hearing, Mr. Turner made it clear Ms. Neal "[i]s my great aunt[]." *Doc. 17-1 at 77*.

documentation of a subpoena cause she told – she said that she
subpoenaed her on record. And I looked through all my
transcript and there's no subpoena. There's a subpoena for
everybody else but Linda Joe Neal.

And I believe that if my auntie would have been able to come
testify, that would have gave the jury some type of benefit of
doubt regarding to the fact that I had no alibi, period. Because
when I was first investigated by the detective, my statement
was I was coming – I was – I'd been in Memphis for three
months. I wasn't even in Arkansas. And that was never even
brought in front of the jury. The jury never knew I came – I
was picked up coming from Memphis.

*Doc. 17-1 at 14, 77-78.*

Ms. Walker-Knight was present during the Rule 37 hearing, but Mr. Turner

elected *not* to call her as a witness and develop the facts surrounding why she had

not subpoenaed Ms. Neal to testify as an alibi witness. *Id. at 69, 79*. Instead, after

Mr. Turner gave *his version* of what Ms. Neal would have said if she were called to

testify, Faulkner County Prosecutor Hugh Finkelstein told the trial judge that Ms.

Walker-Knight had informed him that: (1) before Mr. Turner's trial, she had spoken

with Ms. Neal about her anticipated testimony; (2) she, in fact, subpoenaed Ms. Neal

to testify at trial; but (3) ultimately she decided not to call Ms. Neal to testify because

she "could not give a specific date when [Mr. Turner] was there [in Memphis], only

that at some point he was there, which ultimately would not have given him an alibi

on anything." *Id. at 78*.[5]

---

[5] To confirm the accuracy of the prosecutor's representation, the Court has reviewed the
transcript from Mr. Turner's criminal trial, which is available at the Clerk's Office for the Arkansas

The trial judge then asked Mr. Turner if he had arranged for Ms. Neal to testify at the Rule 37 hearing. Mr. Turner responded as follows:

> MR. TURNER: No, sir. . . . [T]here's no way to specifically say that what [Walker-Knight] [said] is true cause you don't have this woman on the stand stating that or whether her testimony would have been helpful or not.
>
> MR. FINKELSTEIN: Ms. Walker-Knight is here.
>
> MR. TURNER: Oh, I'm talking about Ms. Neal, whether if she would have testified or not.
>
> THE COURT: Well, I mean, you're telling me that she could provide information but you're not telling me – she's not here. You don't have her here either today to testify what – what she would have testified had she been called as a witness; right?
>
> MR. TURNER: No.

---

Supreme Court. After the prosecution rested, Ms. Walker-Knight explained to the trial court why she had not called Ms. Neal to testify:

> I know the Court is aware, we continued this case once because I was advised by my client that he had an alibi witness in Memphis, Tennessee. It was his Aunt Linda Neal. After investigation we did find Ms. Neal and did talk to her on the phone. Ms. Neal could not give an exact date that he was in Memphis. Though he had been [in] Memphis, she could not tell us when.
>
> I also talked to Freddy Neal, her son, who also told me that he [Mr. Turner] was in Memphis but could not give me exact dates. I did send a subpoena to Ms. Neal. She did call me yesterday, advised me that she was not coming. So I just wanted to make that clear for the record, that we did follow through with what was presented by the defendant.

*Turner I*, Ark. Sup. Ct. Case No. CR14-59, *Trial Record at 458-459*. Thus, contrary to Mr. Turner's version of events, as he explained them during the Rule 37 hearing, Ms. Walker-Knight *did* talk to Ms. Neal prior to trial and *did* issue a trial subpoena for her, but later made the *tactical decision* not to call Ms. Neal to testify because she was not able to provide the dates Mr. Turner was with her in Memphis. This meant she could *not* provide an alibi for Mr. Turner on the date he was charged with the aggravated robbery in Conway.

> THE COURT: All I've got is what you're telling me in your petition.
>
> MR. TURNER: Yes, sir. But I'm also stating that she did not subpoena her. There's no documentation. It's just her word that she put on – on the transcript that she subpoenaed her, but there's no documentation of it. But there's documentation of every other subpoena in my transcript.

*Id. at 79-80.*

Mr. Finkelstein then offered into evidence the June 13, 2013 transmittal letter Ms. Walker-Knight sent to Ms. Neal, along with the subpoena. The subpoena required Ms. Neal's presence for Mr. Turner's criminal trial on June 20, 2013. *Id. at 93, 95*. The letter stated:

> Enclosed is a Subpoena[.] . . . As per our conversation, I am sending said Subpoena. The Jury Trial is scheduled for June 20, 2013 at 9:00 a.m., at the Faulkner County Courthouse.

*Id. at 93*. Even in the face of this uncontroverted evidence, Mr. Turner continued to question the validity of the subpoena, because it was not contained in the "transcript" of his trial.[6]  The trial judge responded as follows:

> It's dated by the clerk, June 13th, 2013. . . . I can't tell you why the clerk didn't get it in the file but there's the subpoena[,] . . . And if the subpoena was issued and counsel cho[]se not to call that lady as a witness, that comes under the heading of trial strategy and really not subject to a Rule 37 proceeding.

*Id. at 82.*

---

[6] The trial court's docket sheet confirms a subpoena was issued on June 13, 2013, to Ms. Neal. *Doc. 17-1 at 8.*

10

In affirming the trial court's decision to deny Rule 37 relief, the Arkansas Supreme Court found that: (1) Ms. Walker-Knight's decision not to call Ms. Neal was a matter of trial strategy; (2) Mr. Turner did not provide *any facts* to support his claim that Ms. Walker-Knight was constitutionally ineffective for not calling Ms. Neal as an alibi witness; and (3) Mr. Turner failed to establish that the purported alibi testimony of Ms. Neal would have changed the outcome of the trial given the totality of the evidence. The Court supported these findings with the following detailed analysis of Mr. Turner's first ineffective assistance of counsel claim against Ms. Walker-Knight:

> The one potential alibi witness that Turner named in his petition and raised at the Rule 37.1 hearing was his great aunt, Linda Neal. He alleged that Neal, had she been subpoenaed, could have testified at trial that Turner was living with her in Tennessee at the time of the offenses. At the hearing, the State presented evidence that counsel for Turner wrote Neal before trial informing her of the date of trial and enclosing a subpoena for her appearance. While the subpoena did not reflect service on Neal, the State argued, and the trial court held in its order, that not calling Neal was a matter of trial strategy. Generally, the decision to call a particular witness is one of strategy and is beyond the purview of Rule 37.1. . . . When a decision by counsel was a matter of trial tactics or strategy, and that decision is supported by reasonable professional judgment, then such a decision is not a proper basis for relief under Rule 37.1. . . . This is true even when the chosen strategy was improvident in retrospect. . . .
>
> It should also be noted that Neal did not appear at the Rule 37.1 hearing, and Turner presented no proof that Neal would have provided an alibi. Accordingly, Turner's claim concerning Neal was not supported by facts. The burden was on him to establish that Neal could have provided alibi testimony that

would have changed the outcome of the trial. He did not meet
that burden. . . .

Furthermore, the court, when considering a claim of ineffective
assistance of counsel for failure to call a witness, may take into
account the totality of evidence in deciding if the petitioner has
established that the outcome of the trial would have been
different if a particular witness had been called. This is because
the objective in reviewing such an assertion is to determine
whether this failure resulted in actual prejudice that denied the
petitioner a fair trial. . . .

Here, there was evidence adduced at Turner's trial that a man
went into a retail store, pulled a gun from his backpack, and
demanded money. When the man left the store, he left the
backpack behind, which contained a bottle of mouthwash. One
of the clerks at the store picked a man from a black-and-white
photographic spread who was not Turner with a certainty of 70
to 80 per cent; but, when the clerk was shown pictures in color,
the clerk identified Turner with 100 per cent certainty. The
clerk also identified Turner and the backpack from a video
obtained from the store's security system.

Another clerk first picked the same man that the first clerk had
identified with a certainty of 60 to 70 per cent. When shown
pictures in color, however, the clerk also identified Turner as
the assailant and identified the backpack as the one left in the
store. The State introduced evidence that Turner's DNA was
found on the bottle of mouthwash inside the backpack. While
neither Turner's DNA nor fingerprints were found on the
backpack, as stated, the trial court found the evidence of
Turner's guilt to be substantial, and this court affirmed that
decision. As there was substantial proof adduced at trial of
Turner's guilt, the trial court's decision that counsel was not
ineffective for failing to call Neal as an alibi witness, based on
the totality of evidence alone, was not clearly erroneous.

*Turner II*, 2016 Ark. 423, at 5-9, 503 S.W.3d at 84-85 (citations omitted).[7]

---

[7] In *Turner I*, the Arkansas Supreme Court also carefully explained the strong evidence
that supported Mr. Turner's convictions on all of the charges:

On August 27, 2012, Austin Casher and Taylor Mitchell were working at Game Point, a video-game retail store in Conway, Arkansas. While Casher and Mitchell were preparing to close the store, a man came to the counter, reached into a Nike backpack that he was carrying, and raised a gun. According to Casher, the man stated, "I need all the money. No one is going to get hurt if you cooperate. I need all the money." He ordered Casher and Mitchell to the floor and removed the cash from all the registers and a lockbox, approximately $1200. According to Casher, just before the man left, he said, "I want you guys to remember me because I spared your lives." After the police arrived, Casher discovered the backpack on the floor. The backpack contained a bottle of mouthwash.

On the same day as the crime, Casher and Mitchell separately viewed a black-and-white photographic spread that did not contain Turner's photograph. Casher picked one person – who was incarcerated in Texas [at the time of the crime] – with a certainty of 75% to 80%. Two days later, Casher viewed a color spread. Casher picked Turner as the person who had committed the crimes and told police that he was 100% positive. In court, Casher identified Turner as the person who had committed the crimes. Casher also viewed a videotape taken from the store's security cameras, and he identified Turner and Turner's backpack. He also identified the backpack introduced into evidence as the one Turner had left at the store. On cross-examination, Casher testified that because the second spread was in color, it was easier to determine facial features and skin tone, and he was not in as much shock when he viewed it.

Mitchell testified that he also viewed the black-and-white spread and chose a person – the same person chosen by Casher – with a certainty of 60% or 70%. He further testified that when he viewed the color spread, he chose Turner and indicated to police that he was 60% certain. He testified that the color photographs made it easier to make an identification. Mitchell, in court, identified Turner as the person who had committed the crimes. He also identified the backpack introduced into evidence as the one that Turner had left at the store.

In addition to testimony from Casher and Mitchell, the State introduced testimony from a forensic-DNA examiner who testified that Turner's DNA was found on the inner cap of the bottle of mouthwash. The DNA examiner also testified that DNA from more than two persons was present on a cutting from the Nike backpack. A latent-print examiner testified that he was unable to attribute to Turner any of the fingerprints lifted by the police.

13

The record makes it clear that Ms. Walker-Knight investigated the alleged alibi testimony of Ms. Neal, subpoenaed her to testify at trial, but then determined that her testimony would *not* be useful because she could *not* offer an alibi for Mr. Turner on the date he was charged with committing the aggravated robbery in Conway.  This makes Ms. Walker-Knight's decision not to call Ms. Neal a "virtually unchallengeable decision of trial strategy." *United States v. Orr*, 636 F.3d 944, 955 (8th Cir. 2011) (internal quotations omitted); *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010) (explaining that a reasoned decision not to call a witness is virtually unchallengeable because "there is considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences.") (internal quotations omitted); *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990) ("Decisions relating to witness selection are normally left to counsel's judgment and this judgment [should not] be second guessed on hindsight.").

During his Rule 37 hearing, Mr. Turner had the opportunity to question Ms. Walker-Knight about his version of the facts and to present Ms. Neal's testimony to

---

*Turner I*, 2014 Ark. 415, at 1-5, 443 S.W.3d at 536-538.

14

prove, one way or the other, if she could have provided him with an alibi. He did neither.

Instead, in this habeas action, Mr. Turner asserts, *for the first time in his Reply Brief*, that he was unable to provide testimony supporting his ineffective assistance of counsel claims because the trial court did not provide fair notice of the Rule 37 hearing. *Doc. 21*. To the contrary, during a hearing on April 6, 2015,[8] the trial court advised Mr. Turner that his Rule 37 hearing was scheduled in *five weeks*, on May 15, 2015. *Doc. 17-1 at 66-67*. This certainly constituted fair notice and was more than enough time for Mr. Turner to have Ms. Neal present to offer testimony at that proceeding.

Finally, when the trial court informed Mr. Turner of the date of his Rule 37 hearing, he did not object or ask for more time:

> THE COURT: Mr. Turner, you filed a motion for Rule 37 relief in your previous case. We're going to set that for a hearing on May 15th at one o'clock.
>
> MR. TURNER: Yes, sir.

*Id*. Similarly, during his Rule 37 hearing, on May 15, 2015, Mr. Turner made no complaints that he had not received fair notice of the hearing or that he had not been given sufficient time to arrange for Ms. Neal to testify. *Id. at 69-87*.

---

[8] Mr. Turner appeared on April 6, 2015, for a hearing on *other* aggravated robbery charges that were pending against him in Faulkner County Circuit Court Case No. CR13-364. The trial court took that opportunity to inform Mr. Turner that his Rule 37, related to his aggravated robbery conviction in *Turner I*, would take place in about five weeks, on May 15, 2015. *Doc. 17-1 at 65*.

Accordingly, in adjudicating and rejecting this ineffective assistance of counsel claim, the Court concludes that the Arkansas Supreme Court's decision was not contrary to "clearly established federal law;" did not unreasonably apply *Strickland*; or make an unreasonable determination of the facts in light of the record. Accordingly, Mr. Turner's first ineffective assistance of counsel claim is without merit and must be denied.

### C.   Ms. Walker-Knight's Alleged Ineffectiveness for Failing to Present Mitigation Evidence During Mr. Turner's Sentencing

Mr. Turner also claims that Ms. Walker-Knight provided constitutionally ineffective assistance of counsel by failing to present mitigation evidence at his sentencing. Both in his Rule 37 Petition, and, here, he alleges that "[r]egardless of his guilt":

> [T]rial counsel placed no one on the stand to testify for Bryant Turner. Turner could certainly [have] benefitted from the testimony of people from his community, friends, family, and rehabilitation workers. It was ineffective assistance of counsel for failing to prepare an adequate sentencing phase should Turner be convicted. He was convicted and the jury returned a life sentence in the ADC.

*Doc. 17-1 at 32; Doc. 4 at 2.*

At his Rule 37 hearing, Mr. Turner failed to offer specific evidence or testimony to support this claim:

> THE COURT: You're telling me that there were people who could have testified that would have mitigated in the sentencing phase of the case, but you don't tell me who they

16

are and what they would have said. You don't even put that in
your motion.

MR. TURNER: I mean, that – it's – it's things that anybody
could have –

THE COURT: Well, that's –

MR. TURNER: – friends, family. It's ain't got to –

THE COURT: Well, that's –

MR. TURNER: It ain't specific – it stating –

THE COURT: I don't think –

MR. TURNER: Well, Linda Joe Neal is my family so therefore
it's considered the same –

THE COURT: Mr. Turner, I don't think that meets the
standard.

MR. TURNER: Don't meet the standard because I didn't put a
specific name?

THE COURT: For a Rule 37.

*Doc. 17-1 at 84-85*.

In its order denying Rule 37 relief, the trial court did not directly address Mr.

Turner's mitigation claim. *See* Trial Court's Order Denying Rule 37 Relief, *Id. at*

*40*.  However, the trial court did specifically hold that "petitioner is not entitled to a

hearing on these issues, as he has not stated specific facts in the petition to show a

claim may have merit." *Id*. This holding clearly was intended to encompass Mr.

Turner's mitigation claim, especially in light of the colloquy between the trial court

17

and Mr. Turner about his inability to identify any mitigation witness or other evidence to support that claim. *Id*.

On appeal, the Arkansas Supreme Court also rejected this claim, finding that Mr. Turner made only conclusory allegations, without providing any factual support:

> [T]he trial court did not specifically address the claim. Nevertheless, if it could be said that the trial court's summary rejection of Turner's claims of ineffective assistance of counsel encompassed the allegation, Turner's allegation pertaining to mitigation evidence was entirely conclusory. As with any claim concerning trial preparation, the petitioner must demonstrate that there was specific information to be brought out with further trial preparation. . . . We have held that the petitioner must name a particular witness that counsel could have discovered who would have offered specific, admissible evidence that could have been presented in mitigation. . . . It is incumbent on the petitioner to name the witness, provide a summary of that witness's testimony, and establish that the testimony would have been admissible. . . . Because Turner failed to meet those requirements, his claim did not merit further consideration by the trial court.

*Turner II*, 2016 Ark. 423, at 5-9, 503 S.W.3d at 84-85 (citations omitted).

In his § 2254 habeas Petition and Addendum, Mr. Turner once again fails to allege *any facts* to support this claim, and takes the position that his conclusory allegation Ms. Walker-Knight failed to prepare for the sentencing phase of a criminal trial, without more, is sufficient to establish ineffective assistance of counsel.

While trial counsel's failure to investigate potential mitigation evidence may, in some instances, be professionally unreasonable, the prejudice prong of *Strickland* requires Mr. Turner to prove that such conduct adversely effected his sentence.

18

*United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (8th Cir. 2007) (citing *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir.1989)) (rejecting ineffective assistance of counsel claim because it was unsupported by any independent evidence as to what mitigation testimony would have been offered).

During the Rule 37 hearing, Mr. Turner was given the opportunity to put forward evidence to support this claim, but he failed to do so. As a result, the Court has no inkling of whom Ms. Walker-Knight allegedly should have called as mitigation witnesses, much less what these "people from his community, friends, family, or rehabilitation workers" might have said that would have helped Mr. Turner during the sentencing phase of his trial. Without more, this Court, like the Arkansas Supreme Court, can only speculate about *how* any alleged failure by Ms. Walker-Knight to call mitigation witnesses might have prejudiced Mr. Turner's sentence.[9] It was Mr. Turner's burden to satisfy both prongs of *Strickland*, and he failed to do so. *See Weaver*, 137 S. Ct. at 1910.

Thus, in adjudicating and rejecting Mr. Turner's claim that Ms. Walker-Knight was ineffective for failing to present mitigation evidence during his sentencing, the Arkansas Supreme Court's decision was not contrary to "clearly

---

[9] As a practical matter, mitigation evidence at sentencing would have had *no impact* on Mr. Turner's sentence because he was a habitual offender. Once the jury found him guilty of aggravated robbery, Mr. Turner faced a *mandatory* life sentence pursuant to Ark. Code Ann. § 5-4-501(d). *See Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010) (finding counsel's failure to raise a meritless claim at trial could not constitute ineffective assistance of counsel).

established federal law;" did not unreasonably apply *Strickland*; or make an unreasonable determination of the facts in light of the record. Accordingly, the Court concludes that Mr. Turner's second ineffective assistance of counsel claim is without merit and must be denied.

### III. Conclusion

IT IS THEREFORE ORDERED that this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus, *Doc. 1*, is DENIED and this case is DISMISSED, WITH PREJUDICE.

IT IS FURTHER ORDERED THAT a Certificate of Appealability is DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED THIS 14th day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE